IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SCOT S., INDIVIDUALLY AND ON BEHALF OF HIS MINOR CHILD, LEA S., <br><br> Plaintiffs, <br><br> vs. <br><br> STATE OF HAWAII, DEPARTMENT OF EDUCATION AND KATHRYN MATAYOSHI, IN HER OFFICIAL CAPACITY AS ACTING SUPERINTENDENT OF THE HAWAII PUBLIC SCHOOLS, <br><br> Defendants. | CV. NO. 11-00373 DAE-KSC |

ORDER AFFIRMING THE DECISION OF THE
ADMINISTRATIVE HEARINGS OFFICER

On January 9, 2011, the Court heard Plaintiffs' Appeal of a decision rendered by an Administrative Hearings Officer concerning Lea S.'s eligibility to receive special education and related services. Keith H.S. Peck, Esq., appeared at the hearing on behalf of Plaintiffs; Deputy Attorneys General Kris S. Murakami and Holly T. Shikada appeared at the hearing on behalf of Defendants. After reviewing the appeal and the supporting and opposing memoranda, the Court **AFFIRMS** the Decision of the Hearings Officer.

## BACKGROUND

Lea S. ("Lea") is an eleven-year-old girl who has been attending Assets Private School since 2009. ("Resp. Ex.," Doc. # 15 at 6; Administrative Hearing Transcript ("Tr."), Doc. # 16 at 6.) Her home school is Lanikai Public Charter School. (Resp. Ex. at 5–6.) Lea was previously found eligible for special education and related services under the Individuals with Disabilities Education Act ("IDEA") under the category of Developmental Delay for ages 6-8. (Id. at 5.) Lea turned 9-years-old on December 13, 2009. Pursuant to a settlement agreement, the Defendant State of Hawaii, Department of Education ("DOE") agreed to pay Lea's tuition at Assets for the 2009-2010 school year, which ended on May 27, 2010. (Id. at 166–67.) On August 3, 2010, the DOE rescinded Lea's eligibility for education benefits. (Id. at 59.) At issue in this case is Lea's continued eligibility for special education and related services under the IDEA.

I.    The July 2010 Eligibility Meeting

On July 28, 2010, the DOE held an Individualized Education Program ("IEP") meeting to determine eligibility for special education services. (Id. at 22.) At the meeting, the IEP team, consisting of the Principal, a Student Services Coordinator, a School Psychologist, a Special Education Teacher, and a Regular Education teacher, convened in order to review the results of Lea's reevaluation

and determine her continued eligibility for IDEA services.[1]  (Resp. Ex. at 22; "Pet. Ex.," Doc. # 14 at 20.)  The eligibility team reviewed Lea's Spring 2010 student profile from Assets School, which included, inter alia, the following: (1) a July 2009 assessment based on the Wechsler Intelligence Scale for Children, 4th Edition ("WISC-4"), (2) March and April 2010 assessments based on the Wechsler Individual Achievement Test, 2nd Edition ("WIAT-2"), (3) an April 2010 assessment based on the Woodcock Johnson Tests of Achievement, 3rd Edition ("WJ-3"), (4) an April 2010 assessment based on the Stanford Achievement Test, 9th Edition ("SAT-9"), and (5) a March 2010 assessment based on Diagnostic Achievement Battery - 2 ("DAB-2").  (Resp. Ex. at 26–30.)

The IEP team also reviewed notes from a classroom observation of Lea that was conducted during the language arts and math periods at Assets School on March 9, 2010.  (Pet. Ex. at 20.)  The observer noted that Lea was "socially engaged and responded well to her peers and teachers."  (Id.)  The observer also noted that she was "engaged in the lesson and contributed to the classroom

---

[1] Lea's parents did not attend the IEP meeting.  (Resp. Ex. at 59.)  Numerous attempts were made between April and July 2010 to schedule Lea's reevaluation meeting on a mutually agreeable date and time.  (Id. at 127–55.)  However, after Lea's parents failed to respond to several letters proposing potential meeting dates at the end of July, the reevaluation meeting was held without them on July 28, 2010.  (Id. at 153–155.)

discussion" during the language arts period and "worked independently, accurately and efficiently" during the math period.  (Id.)

   Based on their review of the standardized cognitive and achievement tests summarized in the Spring 2010 Assets School Student Profile and the March 2010 observation, the IEP team determined that Lea was ineligible for special education services under the IDEA.  (Resp. Ex. at 59.)  On August 3, 2010, the DOE issued a Prior Written Notice ("PWN") addressed to Lea's parents stating that it "proposes that [Lea] be rescinded from special education eligibility" because "[Lea]'s academic performance falls within the average range and is consistent with her cognitive skills which are also in the average range as measured by standardized assessments."  (Id.)

II. The Administrative Hearing and Decision

   On September 13, 2010, Lea, by and through her parents Scot. S. and Lofisa S. (collectively, "Plaintiffs" or "Petitioners"), filed a Request for Impartial Hearing ("Request") pursuant to the IDEA and Title 8, Chapters 53 and 60 of the Hawai'i Administrative Rules ("HAR").  (Doc. # 13 at 1–5.)  In their Request, Plaintiffs alleged that the action to rescind Lea's eligibility was inappropriate because she requires "modifications to the content and/or methodology and/or delivery of instruction to support her academic performance."  (Id. at 3.)  Plaintiffs

asked the Hearings Officer to determine that Lea was eligible for special education services and requested reimbursement for educational and related expenses incurred by Lea's parents during the 2010-2011 school year. (Id. at 5.)

An administrative hearing was held before the Department of Commerce and Consumer Affairs, Office of Administrative Hearings, State of Hawaii ("OAH") on March 29, 2011 before Hearings Officer Richard A. Young. (Tr. at 1.) Plaintiffs offered testimony from Lea's mother. According to her mother, Lea has difficulty concentrating and cannot complete her classroom assignments unless it is modified. (Tr. at 14, 40.) Lea's mother also testified that Lea is more confident and enjoys doing her work more at Assets than at her home school. (Tr. at 29.)

Defendants presented testimony from District School Psychologist Dr. Abby Royston and General Education Teacher Dr. April Taylor from Lanikai Elementary School. (Id. at 11, 55, and 112.) Based on her review of Lea's test scores in the Spring 2010 student profile, Dr. Royston concluded that Lea is performing at an average level and that her performance does not support a finding of a specific learning disability. (Tr. at 82–83.) Meanwhile, Dr. Taylor testified as to the various differentiated instruction methods that general education teachers

use in order to meet the individualized needs of each student even if the student does not qualify for special education services. (Tr. at 113–116.)

On May 31, 2011, the Hearings Officer issued his Findings of Fact, Conclusions of Law and Decision ("Decision"). (Doc. # 13 at 60–70.) In his Decision, the Hearings Officer concluded that: (1) Petitioners had not shown that Lea was eligible for special education and related services under the category of Specific Learning Disability ("SLD") or any other category; and (2) Petitioners had not shown that Lea required modifications to the content, methodology, and/or delivery of instruction to support her academic performance. (Id. at 68–69.)

III.    The Instant Appeal

On June 13, 2011, Plaintiffs filed a Complaint in this Court appealing the Hearings Officer's Decision pursuant to 20 U.S.C. § 1415(i)(2)(A). (Doc. # 1.) Plaintiffs filed an Opening Brief on October 24, 2011. ("Pls. Brief," Doc. # 19.) In their brief, Plaintiffs assert that the Hearings Officer erred by finding Lea ineligible for IDEA services under the SLD classification and that they should be reimbursed for Lea's education and related expenses because Assets provided Lea appropriate special education. (Id. at 12.) Defendants filed an Answering Brief on December 2, 2011. ("Dfs. Brief," Doc. # 20.)

## STANDARD OF REVIEW

The IDEA states, in part, as follows:

> Any party aggrieved by the findings and decision made [pursuant to an administrative hearing], shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any state court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

20 U.S.C. § 1415(i)(2)(A). When a party files an action challenging an administrative decision under the IDEA, the district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C); see also Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1471 (9th Cir. 1993). The party challenging the administrative decision bears the burden of proof. See Seattle Sch. Dist., No. 1 v. B.S., 82 F.3d 1493, 1498 (9th Cir. 1996); Hood v. Encinatas Union Sch. Dist., 486 F.3d 1099, 1103 (9th Cir. 2007). The challenging party must show, by a preponderance of the evidence, that the decision of the hearings officer should be reversed. J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist., 626 F.3d 431, 438 (9th Cir. 2010).

In reviewing administrative decisions, the district court must give "due weight" to the state's judgments of educational policy. L.M. v. Capistrano Unified Sch. Dist., 556 F.3d 900, 908 (9th Cir. 2009); Michael P. v. Dep't of Educ., 656 F.3d 1057, 1066 (9th Cir. 2011) (quoting Seattle Sch. Dist., 82 F.3d at 1499). However, the district court has discretion to determine the amount of deference it will accord the administrative ruling. J.W., 626 F.3d at 438 (citing Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1311 (9th Cir. 1987)). In reaching that determination, the court should consider the thoroughness of the hearings officer's findings, increasing the degree of deference where said findings are "'thorough and careful.'" Michael P., 656 F.3d at 1066; L.M., 556 F.3d at 908 (quoting Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 892 (9th Cir. 1995)). The district court should give "substantial weight" to the decision of the hearings officer when the decision "evinces his careful, impartial consideration of all the evidence and demonstrates his sensitivity to the complexity of the issues presented." Cnty. of San Diego v. Cal. Special Educ. Hearing Office, 93 F.3d 1458, 1466–67 (9th Cir. 1996) (citation and quotation marks omitted)). Such deference is appropriate because "if the district court tried the case anew, the work of the hearing officer would not receive 'due weight,' and would be largely wasted." Wartenberg, 59 F.3d at 891.

Further, the amount of deference to be given to an administrative hearings officer's decision is, in part, influenced by whether the hearings officer's findings are based on credibility determinations regarding the witnesses that appeared before him or her. See L.E. v. Ramsey Bd. of Educ., 435 F.3d 384, 389 n. 4 (3rd Cir. 2006) (a district court must accept the state agency's credibility determinations "unless the nontestimonial, extrinsic evidence in the record would justify a contrary conclusion.") (citation omitted); see also Seattle Sch. Dist., 82 F.3d at 1499 (citations omitted).

## DISCUSSION

As a preliminary matter, the Court observes that the Hearings Officer considered and discussed the testimony of the witnesses at the hearing and all of the relevant evaluations, observations, and tests in reaching his decision that Lea was not eligible for special education services under the IDEA. The Court therefore affords the Hearings Officer's "thorough and careful" decision a high degree of deference. See Wartenberg, 59 F.3d at 891.

I.   Eligibility Under the Specific Learning Disability Category

To qualify for services under IDEA, "a child must satisfy three criteria: (i) he must suffer from one or more of the categories of impairments delineated in IDEA, (ii) his impairment must adversely affect his educational

performance, and (iii) his qualified impairment must require special education and related services." Wartenberg 59 F.3d at 889. The only issue raised on appeal is whether the Hearings Officer properly determined that Lea was not eligible for special education services under the SLD category.

Hawaii Administrative Rules § 8-60-41(a) sets forth the standard for determining eligibility under the SLD category. Under that standard, an IEP team may determine that a student has a specific learning disability if:

    (1)    (A) The student does not achieve adequately for the student's age or to meet State-approved grade-level standards in one or more of the following areas, when provided with learning experiences and instruction appropriate for the student's age or State-approved grade-level standards:

        (i) Oral expression;
        (ii) Listening comprehension;
        (iii) Written expression;
        (iv) Basic reading skill (including phonemic awareness, phonics, and/or vocabulary);
        (v) Reading fluency skills;
        (vi) Reading comprehension;
        (vii) Mathematics calculation;
        (viii) Mathematics problem solving; or

(B) The student demonstrates a severe discrepancy between actual achievement and intellectual ability by a difference of at least one and one-half standard deviations in one or more of the areas in subparagraph (A); and

    (2)    (A) The student does not make sufficient progress to meet age or State-approved grade-level standards in one or more of the

>areas identified in paragraph (1)(A) when using a process based on the student's response to scientific, research-based intervention; or
>
>(B) The student exhibits a pattern of strengths and weaknesses in performance, achievement, or both, relative to age, State-approved grade-level standards, or intellectual development, that is determined by the group to be relevant to the identification of a specific learning disability, using appropriate assessments, consistent with sections 8-60-36 and 8-60-37; and

>(3) The [IEP team] determines that its findings under paragraphs (1)(A) and (2)(A) are not primarily the result of:
>
>>(A) A visual, hearing, or motor disability;
>>(B) Intellectual disability;
>>(C) Emotional disability;
>>(D) Cultural factors;
>>(E) Environmental or economic disadvantage; or
>>(F) Limited English proficiency.

HAR § 8-60-41(a).

The two sets of criteria that a student must satisfy in order to be eligible for special education under the SLD classification can be summarized as follows:

>First, the child must demonstrate either (1) inadequate achievement, or (2) a severe discrepancy between achievement and ability.  Second, the child must demonstrate either (1) insufficient progress, or (2) a pattern of strengths and weaknesses in performance consistent with a "specific learning disability."

Michael P., 656 F.3d at 1069.

A. <u>Inadequate Achievement</u>

Plaintiffs assert that Lea meets the eligibility requirements under the SLD category because she does not achieve adequately for her age or meet State-approved grade-level standards in the areas of reading and mathematics. <u>See</u> HAR § 8-60-41(a)(1)(A). (Pls. Brief at 4–5.) To support this contention, Plaintiffs rely on a Spring 2009 assessment administered by the DOE, which shows that Lea achieved a reading score "well below proficiency" and a math score that "approaches proficiency." (<u>Id.</u>; Resp. Ex. at 93–94.) Plaintiffs assert that these scores demonstrate that Lea fell within the "below average" performance level in these two subject areas. (Pls. Brief at 4.) However, as the Hearings Officer pointed out, the Spring 2009 assessment was done over a year before the August 3, 2010 PWN was issued. (Doc. # 13 at 67.) It therefore does not constitute a "<u>current</u> classroom-based, local, or State assessment[]." <u>See</u> 20 U.S.C. § 1414(c)(A)(ii) (emphasis added). Since the issue in this case is Lea's eligibility to receive special education benefits for the 2010-2011 school year, the various assessments conducted at Assets School in the Spring of 2010 are more probative of Lea's current ability and achievement levels.[2] Indeed, Dr. Royston testified that

---

[2]Plaintiffs state in their brief that "[t]he ONLY measure of "state-approved, grade level standards available to the DOE, at the time of the eligibility meeting,
(continued...)

12

the Spring 2010 assessment results were current for purposes of the July 28, 2010 evaluation meeting. (Tr. at 62.)

Lea's performance on the Spring 2010 assessments supports a finding that she does not have a specific learning disability in the areas of reading or math. With respect to reading, Dr. Royston examined Lea's "grade-normed" scores[3] on several tests administered in April 2010 and made the following observations: (1) her word reading and decoding scores on the WIAT-2 are average; (2) her word identification score on the Woodcock Reading Mastery Test is slightly weaker than

---

[2](...continued)
was its own [2009] assessment." (Pls. Brief at 4.) To the extent that Plaintiffs assert that none of the standardized assessments conducted in Spring 2010 measure state-approved grade level standards, the Court concludes that that argument lacks merit. Plaintiffs have not provided any evidence or legal authority to support that assertion. Moreover, Plaintiffs themselves rely on the 2010 assessment results to support their arguments. (See Pls. Brief at 5–6.) The Court notes that these assessments are frequently used to determine eligibility for IDEA services for students in Hawaii. See, e.g., Michael P., 656 F.3d at 1073; E.M. ex rel. E.M. v. Pajaro Valley Sch. Dist. Office of Admin. Hearings, 652 F.3d 999, 1001–1002 (9th Cir. 2011); and Virginia S. ex rel. Rachael M. v. Dept. of Educ., No. 06-00128 JMS-LEK, 2007 WL 80814, at *3 (D. Haw. Jan. 8, 2007). Additionally, Dr. Royston testified that the assessments conducted at Assets School in 2010 are standardized. (Tr. at 62, 70–71, 104.)

[3]Dr. Royston explained that these "grade-normed" scores reflect a comparison with a national sample of other students in the fourth month of the fourth grade. (Tr. at 72.) She also noted that since Lea's birthday is in mid-December, most children in her grade are actually older than her. (Id. at 73.) In other words, the grade-normed scores reflect Lea's performance as compared to other fourth graders that are mostly older than she is.

13

her scores on the WIAT-2 but still fall within the average range; (3) her reading comprehension score on the WIAT-2 is very much in the middle of the group; and (4) her reading comprehension on the WJ-3 is a little below average. (Tr. at 73–75; Resp. Ex. at 28.) Dr. Royston determined that all of Lea's reading scores, when taken as a whole, demonstrate that "she's generally functioning in the middle of the pack." (Tr. at 75.) Similarly, with respect to mathematics, Dr. Royston concluded that Lea demonstrated "middle of the pack functioning" in math computation and math concepts and applications. (Tr. at 77–78.) This conclusion was based on Lea's performance on the WIAT-2 in March and April of 2010 as well as her performance on the SAT-9 in April 2010. (Id.; Resp. Ex. at 30.)

        Plaintiffs have not proffered any probative or credible evidence to rebut these findings. Lea's "below average" performance in reading and mathematics on the assessment conducted in the Spring of 2009 is not sufficient to demonstrate inadequate achievement in light of her more recent, average-level performance in those subject areas, as reflected in the various standardized achievement tests administered by Assets and explained in Dr. Royston's testimony. Accordingly, the Court finds that Plaintiffs have failed to prove by a

preponderance of the evidence that Lea did not achieve adequately in reading or mathematics.

      B.    <u>Severe Discrepancy Between Achievement and Ability</u>

Plaintiffs next contend that Lea is eligible for IDEA services because there is a wide discrepancy between her achievement and ability in the areas of reading comprehension, written expression, and mathematics concepts and applications. (Pls. Brief at 5–6.) However, in order to be eligible under section 8-60-41(a)(1)(B) of the Hawaii Revised Statutes, the student must demonstrate not merely a "wide discrepancy," but rather a "severe discrepancy between actual achievement and intellectual ability by a difference of at least one and one-half standard deviations" in one of the relevant subject areas. HAR § 8-60-41(a)(1)(B). This "'severe discrepancy model' is based on the premise that underperforming students with relatively high IQs must have a learning disability, whereas underperforming students with low IQs are just 'slow.'" <u>Michael P.</u>, 656 F.3d at 1061 (internal citation omitted).

Here, Lea has a full scale IQ of 97 according to the WISC-4. Contrary to Plaintiffs' assertion, none of the achievement test scores identified by Plaintiffs, or any of Lea's other achievement test scores in the record, reflects a

difference of at least one and one-half standard deviations from Lea's IQ score.[4] Moreover, Plaintiffs have not proffered any additional evidence to demonstrate a severe discrepancy between Lea's achievement and ability. The Court therefore finds that Plaintiffs have failed to prove by a preponderance of the evidence that Lea meets the requirement set forth in section 8-60-41(a)(1)(B).

    C.    <u>Insufficient Progress or Pattern of Strengths and Weaknesses</u>

Plaintiffs' showing with respect to the second requirement for eligibility under SLD is also inadequate. Plaintiffs first contend that Lea's "below average" performance on the assessment conducted in the Spring of 2009 demonstrates "insufficient progress" in the areas of reading and mathematics. However, as discussed above, Lea's performance on the 2010 achievement tests indicates that she is performing at an average level in those subject areas. Since Plaintiffs have not submitted any other evidence to rebut Dr. Royston's findings regarding Lea's most recent test results, the Court concludes that Plaintiffs have

---

[4]The Court notes that the comparison between Lea's age-normed IQ and grade-normed achievement test scores is statistically imperfect. However, as explained above, Lea's grade-normed test scores reflect a comparison with students that are mostly older than her. Therefore, if anything, the discrepancy between her ability and achievement may in fact be smaller than as reflected in the comparison between her IQ and grade-normed test scores.

not shown by a preponderance of the evidence that Plaintiff is making insufficient progress in reading and mathematics.

Plaintiffs similarly fail to support their contention that Lea exhibits a pattern of strengths and weaknesses in performance, achievement, or both. Plaintiffs merely refer to an IEP authored by the DOE on April 29, 2010, which indicates that Lea was offered 450 minutes per week of special education services for mathematics and language arts. (See Pls. Brief at 8–9; Resp. Ex. at 52.) Plaintiffs do not explain how that IEP demonstrates a significant pattern of strengths and weaknesses. Moreover, the Court notes that while Plaintiffs emphasize the fact that the April 29, 2010 IEP was authored "[o]nly three months prior to rescinding [Lea]'s eligibility," they fail to mention that the IEP is based on a review of diagnostic test results from July and September of 2009. (Resp. Ex. at 43.) Dr. Royston testified that Plaintiffs' more recent diagnostic test results do not reflect a significant pattern of strengths and weaknesses demonstrative of a learning disability. (Tr. at 81–83.) Accordingly, the Court finds that Plaintiffs have not shown by a preponderance of the evidence that Lea exhibits a pattern of strengths and weaknesses sufficient to meet the requirements set forth in section 8-60-41(a)(2)(B) of the Hawaii Revised Statutes.

In sum, for the reasons set forth above, the Court agrees with the Hearings Officer's determination that Plaintiffs did not meet their burden of showing that Lea is eligible for IDEA services under the SLD classification.

II.   Classroom Observation

Plaintiffs next contend that there is no way to know whether the classroom observation added anything to the eligibility determination.  This argument lacks merit and is not supported by the record.  The DOE evaluation summary report from the July 28, 2010 eligibility meeting, which Plaintiffs themselves admitted into evidence, expressly states that:

> A classroom observation was conducted during language arts and math periods at ASSETS School on 3/9/2010.  The observer noted that Lea is an independent student who has an enthusiastic attitude towards learning.  The observer also noted that Lea was socially engaged and responded well to her peers and teachers.  During the language arts period, Lea was engaged in the lesson and contributed to the classroom discussion.  During the math period, Lea worked independently, accurately and efficiently.

(Pet. Ex. at 20.)  Additionally, the PWN sent to Lea's parents on August 3, 2011 indicates that the March 2010 observation was among the evaluations used as a basis for the proposed rescission.  The evidence therefore makes clear that the IEP team considered and relied on the classroom observation for purposes of determining Lea's eligibility and they were permitted to do so.  See 20 U.S.C. §

1414(c)(A)(iii).  Moreover, Plaintiffs' speculation about what the IEP team might have discussed at the eligibility meeting has no bearing on the Court's decision.

III.    Reimbursement

Plaintiffs seek reimbursement for Lea's private school tuition at Assets and other related expenses incurred from the date of filing the request for the administrative hearing until the next annual IEP meeting on August 11, 2011. Pursuant to the IDEA, a court may award reimbursement for private school placement if a school district erroneously denies a child eligibility for services under the IDEA and the private school placement is appropriate.  Michael P., 656 F.3d at 1069 (citing T.A., 129 S. Ct. at 2495–95); see also 20 U.S.C. § 1415(i)(2)(c).  Reimbursement is also available for other related services, such as transportation.  Id. (citing Union Sch. Dist. v. Smith, 15 F.3d 1519, 1528 (9th Cir. 1994)).  Here, the Court has found that DOE did not erroneously deny Lea eligibility for special education under the SLD classification.  Plaintiffs therefore are not entitled to reimbursement for the costs associated with Lea's education at Assets.  Further, since Plaintiffs are not the prevailing party, they are not entitled to attorneys' fees and costs.  See 20 U.S.C. § 1415(i)93)(B)(i)(I) (authorizing attorneys' fees under the IDEA to a prevailing party who is the parent of a child with a disability).

## CONCLUSION

For the reasons stated above, the Court AFFIRMS the Decision of the Hearings Officer regarding Lea's eligibility for special education and related services under the IDEA. Plaintiffs' request for reimbursement for educational expenses and attorneys' fees and costs is DENIED. The Clerk of Court is directed to enter judgment for the Defendants and close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 9, 2012.



_____
David Alan Ezra
United States District Judge

Scot S., et al. v. State of Hawaii, Dept. of Edu., CV No. 11-00373 DAE-KSC;
ORDER AFFIRMING THE DECISION OF THE ADMINISTRATIVE
HEARINGS OFFICER